Ted WALLIN, Administrator of the
Estate of Rosie Kazarian,
Plaintiff-Appellee,

v.

The GREYHOUND CORPORATION,
Defendant-Appellant.

No. 15622.

United States Court of Appeals
Sixth Circuit.

Feb. 26, 1965.

John B. Rayson, Knoxville, Tenn. (Stuart F. Dye, Knoxville, Tenn., on the brief; Kramer, Dye, Greenwood, Johnson & Rayson, Knoxville, Tenn., of counsel), for appellant.

John P. Davis, Jr., Knoxville, Tenn. (J. H. Doughty, Knoxville, Tenn., on the brief; Hodges, Doughty & Carson, Knoxville, Tenn., Fred L. Myers, Newport, Tenn., of counsel), for appellee.

Before CECIL and PHILLIPS, Circuit Judges, and McCREE, District Judge.

McCREE, District Judge.

This is an appeal by defendant from a judgment in a diversity action, tried to the court without a jury, in which plaintiff was awarded damages on allegations that she was injured when defendant negligently caused her to fall to the floor of a bus on which she was a fare-paying passenger.

At the argument on appeal the suggestion of plaintiff's death was made and a motion for substitution of her administratrix was duly granted.

The questions presented for determination are whether or not the trial court's finding that the defendant was guilty of a negligent omission "to inspect properly its bus" has sufficient evidentiary support and whether the court erred in applying the best evidence rule so as to preclude defendant's witnesses from testifying on the basis of company records that a certain employee had worked on the day it was claimed he had serviced the bus upon which plaintiff was a passenger.

There is no factual dispute about the commencement of plaintiff's journey which began when, with her six year old grandson, she boarded a Greyhound bus in Wayne, Michigan to travel to Newport, Tennessee, changing buses en route. After a terminal stop at Knoxville, plaintiff boarded or reboarded defendant's bus, and proceeded to her destination at Newport, approximately fifty miles distance.

Defendant does not dispute her version of the occurrence of the fall as she described it as she prepared to alight at Newport, "Well, as I was getting up, just about the center of this rise in the road, I was standing pretty well on my feet and the bus rocked or weaved a little bit, going down towards the terminal, and kind of knocked me off balance. I didn't fall but I was, I don't know, staggering around I guess you'd call it. Then as he pulled in to the curb and hit this object, whatever it was I stepped on something rolling, I could hear it. * * * "

It is undisputed that the object upon which plaintiff stepped was a cylindrical flashlight battery, as the court below found, and neither party suggests on appeal that the fall should be attributed to the manner in which the vehicle was operated.

It is admitted by defendant that the driver made no inspection of the interior of the bus en route between Knoxville and Newport.

The trial court found, "that the proximate cause of this accident and the resulting injuries to the plaintiff, Mrs. Kazarian, was the negligent omission of the defendant's employees to inspect properly its bus on which she was riding, resulting in the flashlight battery being where Mrs. Kazarian stepped on it and fell while preparing to alight from the bus."

The court's finding of "negligent omission * * * to inspect" is based on its determination in the memorandum opinion that "There is no probative proof that this bus was cleaned and inspected at the Knoxville terminal, except the statement of the oncoming driver that he made an inspection. He conceded in cross-examination that the flashlight battery could have been present at the time because of the limited nature of his inspection." The trial judge expressly pretermitted consideration of any duty to inspect en route.

The first question for determination therefore becomes whether or not the finding of fact of a "negligent omission to inspect" at the Knoxville terminal is clearly erroneous.[1]

The trial judge correctly stated the law in his opinion when he said:

█ "The defendant Greyhound was not an insurer of the safety of Mrs. Kazarian while she was a fare-paying passenger on its bus, but it was charged with the highest degree of care. Mc-Broom v. S. E. Greyhound Lines, C.A. Tenn. (1945), 29 Tenn.App. 13, 193 S. W.2d 92, 95 [3]".

█ As the trial judge further recited in his opinion, "Among the other duties of the defendant to Mrs. Kazarian and other passengers riding its conveyances was that of inspecting the floor of this bus for foreign objects which constituted hazards to its passengers. This was true whether the foreign objects were placed there by its employees or others, if they were allowed to remain when a proper and timely inspection, in the exercise of the highest degree of care and foresight for the safety of the passengers would have revealed the presence of the objects. Gargaro v. Kroger Grocery and Baking Co., C.A.Tenn. (1938), 22 Tenn.App. 70, 74, 118 S.W.2d 561, 563–564."

The trial judge made a finding that there was no probative proof that the bus was cleaned and inspected at the Knoxville terminal and that the proximate cause of the injuries to the plaintiff was the failure of the defendant's employees to inspect the bus properly during the stop at Knoxville. After carefully reviewing the record, we hold that this finding is clearly erroneous.

The bus driver, Major Freeman, aside from describing his own inspection, which the trial judge found "limited" because although he walked up and down the aisle and checked the floor of the bus he did not get down on his hands and knees and look under the seat, and from where he was standing he could not have seen a flashlight battery had it been under the seat, testified positively that "the porter serviced the bus." When asked what this entails, he replied, " * * * The bus is fueled, and swept out, water and oil is checked, and the bus is swept on the inside, swept out on the inside, and the restrooms usually cleaned." He further testified that he made his inspection in Knoxville after the bus had been cleaned before he started on his run. This testimony is evidence of cleaning and inspection. It was not contradicted on cross-examination of the witness and the trial court did not find that this testimony was unworthy of belief.

██ Roy Wells, defendant's superintendent in the Knoxville terminal on the date of plaintiff's journey, was asked about the employment on that day of Ben Jones, a porter whose duties required him to sweep out and mop the busses in the Knoxville terminal. After he had identified as an exhibit the time card of Ben Jones as an original permanent record kept by Greyhound, it was excluded as not being the best evidence of Jones' employment. This is an erroneous application of the best evidence rule which is concerned only with proving the terms of a writing. Wigmore, Evidence Secs. 1177–1282.

█ The only testimony to the effect that no inspection was made at Knoxville was plaintiff's own statement that she saw no one clean the bus. This negative testimony is insufficient to support the finding of the trial court, in view of the positive testimony to the effect that the bus was inspected, cleaned and swept during the Knoxville stop, and the further fact that plaintiff was not seated on the bus during all of the time it was stopped in Knoxville.

1. Rule 52(a), F.R.Civ.P. provides in pertinent part that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Since there is no evidence that the bus was not cleaned and inspected in Knoxville, and all the evidence is to the effect that it was .cleaned and inspected, negligence cannot be predicated upon a nonexistent fact. We are unable to affirm the holding of the trial court that plaintiff's injuries were caused by the failure of defendant's employees to clean and inspect the bus at Knoxville.

The trial judge did not rule on plaintiff's alternative theory of liability, that is, the possibility of a duty to inspect arising from notice to the bus driver of the presence of the battery from testimony that it was rolling on the floor enroute between Knoxville and Newport. If there is liability on the part of the bus company, it would have to be based on a failure to inspect enroute after the bus had left Knoxville.

We conclude that the case should be remanded for a new trial and that there should be a determination by the district court on the question of fact as to whether the bus driver knew or should have known that the battery was rolling around on the floor, thereby constituting a hazard to passengers. Generally the law is that the defendant bus company, through its driver, would have to have either actual or constructive notice of the presence of the battery before liability would attach.

In Railroad Co. v. Kuhn, 107 Tenn. 106, 115, 64 S.W. 202, the Supreme Court of Tennessee quoted with approval the following from 2 Shearman & Redfield on Negligence, Sec. 516: "The mere fact of an injury suffered by a passenger, while on his journey, without any evidence connecting the carrier with its cause, is not sufficient to raise a presumption of negligence on the part of the carrier." Thus the mere fact that defendant allowed the battery to remain on the floor of its bus for a sufficient time to constitute a hazard is an insufficient predicate for liability under Tennessee law in the absence of actual. or constructive notice to the driver. See Gargaro v. Kroger Grocery & Baking Co., supra, 22 Tenn.App. 70, 74, 118 S. W.2d 561; Kinser v. Rich's, Inc., 300 F.2d 902 (C.A. 6) and note thereon in 30 Tenn.Law Rev. 680.

The judgment of the district court is vacated and the case is remanded for a new trial.