Tommy L. FULTS, Plaintiff,

v.

Everett PEARSALL, etc., et al., Defendants.

No. CIV–4–74–15.

United States District Court,
E. D. Tennessee,
Winchester Division.

March 3, 1975.

Quinton F. Horton, McMinnville, Tenn., for plaintiff.

Clinton H. Swafford, Winchester, Tenn., and Larry B. Stanley, McMinnville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

This is an action for money damages for the defendants' allegedly depriving the plaintiff of his federal constitutional right to due process and the equal protection of the laws, Constitution, Fourteenth Amendment, and to be free from unlawful seizure, Constitution, Fourth Amendment. 42 U.S.C. § 1983. The Court has jurisdiction under 28 U.S.C. § 1343(3). Trial was to the Court without the intervention of a jury on January 20, 1975.

The plaintiff Mr. Tommy L. Fults was a deserter from the United States Navy and absent without leave therefrom for 61 days on October 1, 1973. The office of the defendant sheriff Mr. Everett Pearsall had received and posted notice from the naval authorities that Mr. Fults, who hailed from Warren County, Tennessee, was absent without leave from his duty station in Memphis, Tennessee, and the defendant Mr. Jerry Denton, a deputy sheriff of such county, had notice of that fact. Mr. Denton had discussed the status of Mr. Fults and his brother with a special agent of the Federal Bureau of Investigation.

Mr. Fults and his friend Mr. Danny Munsey were together on the afternoon and evening preceding the aforementioned date. About midnight, they visited Dairy Chef, a drive-in restaurant in McMinnville, Tennessee, and were accompanied from there by young Miss Brenda Bowles. This trio of young persons drove to a customary parking place upon a semi-graveled roadway and stopped to talk. Shortly after 1:00 o'clock, a. m., Mr. Denton and a part-time deputy sheriff, the defendant Mr. Clarence Kirby, were engaged in patrolling the roadway on which Mr. Fults and his friends had parked.

Mr. Munsey, who was seated in the rear seat of the automobile in the front seat of which his friends were seated, advised Mr. Fults of the approach of automobile lights from their rear. Thereupon, Mr. Fults started the vehicle he had been driving and departed the scene. The defendant-deputies followed, coming at one time close enough to the vehicle Mr. Fults was driving to observe its rear license plate. Mr. Kirby called by radio for the name of the owner thereof.

Mr. Fults drove from the roadway on or near which he had been parked and turned to his right onto a through highway and also turned right at an intersection of a second through highway. He testified that he stopped in obedience to stop-signs of each intersection. Mr. Munsey testified that there were no such signs at those intersections, but that Mr. Fults stopped at each of them nevertheless. Messrs. Denton and Kirby testified that the vehicle Mr. Fults was driving stopped at neither such intersection.

Mr. Denton testified that he turned-on the blue warning lights of the patrol car he was operating after the automobile Mr. Fults was driving failed to stop at the first such intersection. After passing the second such intersection, Mr. Fults pulled the automobile he was driving off of the roadway and stopped. Mr. Denton approached Mr. Fults and commented upon the latter's allegedly reckless driving. He asked Mr. Fults for his driver's license. Mr. Fults had none, stating that he had lost it. Mr. Denton then asked if Mr. Fults was not "a

Fults". Mr. Fults admitted he was, and also gave Mr. Denton the names of his passengers. Mr. Denton inquired of Mr. Fults: "You're A. W. O. L., aren't you?" Mr. Fults replied: "No, I'm a deserter."

Mr. Denton then inquired concerning the ownership of the automobile Mr. Fults was driving. Mr. Fults replied he had no title papers available for the vehicle, but that it was owned by his mother. At this point, Mr. Kirby, who had been advised by radio that the vehicle was registered to Mr. Charles Walker, of Altamont, Tennessee[1], joined the group and the conversation and disputed Mr. Fults' claim, stating the true owner's name. Mr. Fults persisted in his claim that his mother owned the vehicle. Mr. Denton then told Mr. Fults, "you'll have to come with us."[2] Mr. Kirby stated to Mr. Fults that the officers would take him down to the jail and check out the title of the car[3] and A. W. O. L. papers, " *   *   * and if you're all right we'll take you home or let you go."

Mr. Fults began walking toward the patrol car with the officers. As Mr. Denton was opening the rear door thereof, Mr. Fults fled. Mr. Denton gave chase, and both officers called to Mr. Fults to "halt!" Mr. Fults continued to flee, although he testified that he understood his obligation to stop when so ordered by law enforcement officials. Mr. Kirby outdistanced Mr. Denton and continued in hot pursuit. When Mr. Fults continued to flee, Mr. Kirby fired a 38 cal. pistol three times. This weapon was loaded with no. 9 shot, known as "snake shot". Mr. Kirby testified that he fired the pistol upwardly; however, Mr. Fults was struck in his body by shots three times. He sustained an injury to the middle portion of his left forearm, where a wound the approximate size of the tip of an adult's finger appeared, and the left side of his neck and back. Mr. Fults made good his escape.

Mr. Fults reported his plight to his superiors in the Navy by telephone and, upon advice received, waited until later that morning before seeking medical attention. Several shots were excised from his body by a hospital emergency room physician. Authorities of the hospital reported the presence there of a patient with a gunshot wound to the defendant sheriff's office, and Mr. Fults was taken into custody by the defendants after receiving treatment. He was charged by arrest warrants with driving a motor vehicle without an operator's license and resisting arrest as a deserter. He paid a fine for the first such offense and has never been tried on the second.

■ The plaintiff claims that the defendant sheriff Mr. Pearsall is liable vicariously to him for the wrongs of his codefendant-deputies under the doctrine of *respondeat superior.* There is no merit to such claim. Under Tennessee law: " *   *   * No sheriff *   *   * shall be liable for any wrongs, injuries, losses, damages or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by said sheriff, whether said deputy is acting by virtue of office, under color of office or otherwise. *   *   *" T.C.A. § 8–832. This law was enacted in 1972, prior to the alleged wrongs of Mr. Pearsall's deputies herein. Accordingly, judgment will ENTER that the plaintiff Mr. Tommy Fults take nothing from the defendant Mr. Everett Pearsall in this action. Rule 58(1), Federal Rules of Civil Procedure.

The Court finds under all the facts and circumstances in evidence and the reasonable inferences flowing therefrom that Messrs. Denton and Kirby had probable cause to stop and arrest Mr. Fults at the pertinent time. They were under

---

1. Mr. Fults was driving Mr. Walker's automobile with the latter's permission. Mr. Walker was "dating" Mr. Fults' mother at that time, and they have since been married.

2. Although Mr. Denton did not advise Mr. Fults of the former's authority and the cause of the arrest, T. C. A. § 40–806, Mr. Fults

testified that he knew at the time of the discussion that Messrs. Denton and Kirby were deputies sheriff and knew that he was being taken to jail for violating the law.

3. The officers sought unsuccessfully afterward that evening to contact Mr. Walker.

the impressions that Mr. Fults had committed in their presences the misdemeanor of driving a vehicle in wilful or wanton disregard for the safety of persons or property, T.C.A. § 59–858, and the further misdemeanor, T.C.A. §§ 59–803, 1023, of failing to stop at the entrance to a through highway, T.C.A. § 59–830, as required by T.C.A. § 59–849.

After the officers stopped the vehicle which Mr. Fults was operating, Mr. Denton ascertained in his presence that Mr. Fults was in violation also of the misdemeanor of operating a motor vehicle without an operator's or chauffeur's license being in his immediate possession. The remaining defendants discovered also that Mr. Fults was absent without leave, or according to his own statement, a deserter from the armed forces.[4] "Any civil officer having authority to apprehend offenders under the laws * * * of a State * * * may summarily apprehend a deserter from the armed forces and deliver him into the custody of those forces. * * *" 10 U.S.C. § 808; see *United States v. Grass*, C.A.6th (1971), 443 F.2d 28, 29.

▇▇▇ It appears that the defendant Mr. Denton actually placed Mr. Fults under arrest. He intended for Mr. Fults to remain in his custody and be transported to jail. Mr. Fults testified that he understood he was in the custody of the officers and was to be taken to jail. The elements necessary to arrest under Tennessee law are an intention to take the party into custody and subjecting the person arrested to the actual control and will of the person making the arrest. *United States v. Jones*, D.C.Tenn. (1972), 336 F.Supp. 41, 44. For the purposes of this case, therefore, the arrest of Mr. Fults by Mr. Denton was completed. *Henry v. United States* (1959), 361 U.S. 98, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139.

▇▇▇ It must be inferred from the totality of the circumstances, however, that the arrest by Mr. Denton was for the misdemeanor of operating a vehicle without an operator's license. That being the case, Mr. Kirby had no right to shoot Mr. Fults or shoot at him. " * * [A]ll our cases are to the effect that, excluding any question of self-defense, an officer is never warranted in law in shooting or in shooting at one who is guilty of only a misdemeanor either for the purpose of the original arrest or for the purpose of recapture after his escape from arrest. * * *" *Day v. Walton* (1955), 199 Tenn. 10, 281 S.W.2d 685, 690 [5]. " * * * The law considers that it is better to allow [a misdemeanant] to escape altogether than to take his life or do him great bodily harm. * * *" *State v. Dunn*, C.A.Tenn. (1943), 39 Tenn.App. 190, 282 S.W.2d 203, 206.

Although Mr. Kirby testified that he neither shot nor fired at Mr. Fults, this is contradicted by both the positive testimony to the contrary of the latter and the applicable physical facts. Mr. Kirby testified that he was uphill from Mr. Fults when he fired his pistol. Mr. Fults testified that he heard a weapon discharged from his rear, that he was immediately knocked from his feet, and sustained a wound to his arm. He stated that he heard two additional such discharges and immediately thereafter sustained wounds in his left rear side. Shot were excised from the portions of Mr. Fults' body which he testified were struck by shot, and Mr. Munsey testified that he saw the wounds Mr. Fults claimed were inflicted upon him by the shootings. A shot, not dissimilar from the type Mr. Kirby described he was using, was exhibited to the Court.

▇▇▇ Other things, such as opportunity to observe and the credibility of the witnesses being equal, greater weight and probative value should be given to positive and affirmative evidence than to negative evidence. *Wallin v. Greyhound Corporation*, C.A.6th (1965), 341 F.2d 521, 523 [5]. Thus, Mr. Kirby's purely negative testimony concerning the manner of

---

4. Mr. Fults testified on the trial that he had indeed deserted his post of duty at Memphis and was absent without leave; that, he was disciplined by the United States Navy and punished subsequently with a dishonorable discharge.

his discharge of his weapon has no probative value as against the positive evidence to the contrary of Messrs. Fults and Munsey and the contrary physical facts. *Cf. Dean v. Southern Railway Company*, C.A.6th (1964), 327 F.2d 757, 760 [2]. Mr. Kirby's aforementioned opinion that he fired his weapon into the air and not at Mr. Fults, being contrary to the physical facts, has no probative force or value. Any opinion, which is contrary to the physical facts, and does violence to reason, is robbed of its probative value. *Weinberg v. Northern Pac. Ry. Co.*, C.C.A. (1945), 150 F.2d 645, 651 [6], certiorari denied *sub nom. State of Washington v. United States of America* (1954), 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679.

Mr. Kirby claims, by brief, that he was justified in firing his weapon because he had information that Mr. Fults had committed the felony of desertion from the armed services. " * * * If, after notice of the intention to arrest the defendant, he * * * flee * * *, the officer may use all the necessary means to effect the arrest. * * * " T.C.A. § 40–808. This statute was construed by a district court of three judges and found to be constitutional. *Cunningham v. Ellington*, D.C.Tenn. (1971), 323 F.Supp. 1072, but see concurring opinion of Circuit Judge McCree in *Beech v. Melancon*, C.A.6th (1972), 465 F.2d 425, 426–427. Thereunder, " * * * 'an officer may shoot * * * a felon, if that is the only means of * * * preventing his escape * * * '." *Gross v. Abston*, C.A.Tenn. (1957), 44 Tenn.App. 68, 311 S.W.2d 817, 820, certiorari denied (1958).

It is true that in some factual circumstances, desertion from the armed services is a felony. 10 U.S.C. § 856; Manual for Courts-Martial, United States, 1969, § 127, Table of Maximum Punishments, section A, article 85.

The difficulties with Mr. Kirby's contention in this regard are, first, that there were other means of preventing Mr. Fults' making good his final escape, and secondly, Mr. Kirby had at no time given Mr. Fults notice of his intention to arrest him. Contrawise, he had stated to him specifically that he was being taken to the jail for investigation concerning the ownership of the automobile he was operating and his status as a member of the armed services.

Mr. Fults was a long-time resident of Warren County, Tennessee. His mother resided there. He had been apprehended there several times previously on "pick-up" orders of the Navy. Although Messrs. Denton and Kirby claimed that they did not know Mr. Fults had been shot, he was wounded and would require medical attention. Mr. Kirby was on notice that any hospital, physician or nurse called upon to tender aid to any person suffering from any wound inflicted by means of a pistol was required by law to report that fact to the sheriff, T.C.A. § 38–601, under pain of a criminal penalty, T.C.A. § 38–603. There was little risk that Mr. Fults would ultimately remain a fugitive from justice.

■■■ As Mr. Kirby shot Mr. Fults without justification, he, under the color of Tennessee law, subjected the latter, a citizen of the United States, to the deprivation of a right secured to Mr. Fults by the Constitution, and is found and concluded to be liable to the party injured in this action at law. 42 U.S.C. § 1983. The arbitrary conduct of a state law enforcement officer in subjecting a citizen to the reckless use of excessive force while undertaking to keep him in custody is a constitutional violation, usually described as a violation of the right to due process of law. *Smartt v. Lusk*, D.C.Tenn. (1973), 373 F.Supp. 102, 104, affirmed *sub nom. Smartt v. Stalcup*, C.A.6th (1974), 492 F.2d 1244 (table).

■■■ Mr. Fults is entitled as a consequence to nominal damages by the proof of such deprivation. *Ibid.*, 373 F.Supp. at 105 [2]. As a part of those damages, the plaintiff incurred medical expenses of $469.90; he suffered pain and mental anguish; and he is left with a scarred left forearm. It is the decision of this Court that the plaintiff Mr. Tommy Fults take nothing from the defendant

Mr. Jerry Denton, and that the plaintiff Mr. Tommy Fults recover of the defendant Mr. Clarence Kirby compensatory damages of five-hundred, sixty-nine dollars and sixty cents ($569.60).

■ In this instance, the Court is of the opinion that there was present an entire want of care on the part of Mr. Kirby which raises a presumption of his conscious indifference to the consequences. In such a case, the interests of Society and of the aggrieved individual are blended, and punitive damages are allowed as punishment for such conduct as an example to the guilty person and others, to deter them from committing a like offense in the future. *Honaker v. Leonard*, D.C.Tenn. (1971), 325 F.Supp. 212, 213 [1]. Under all of the circumstances, the punitive damages assessed will be token only, awarded for the sole purpose of indicating that law enforcement officers will not be permitted, just because they are armed with a commission, a badge and a weapon, to act without proper care and flagrantly deprive other citizens of their lawful rights. It is the further decision of this Court that the plaintiff Mr. Tommy Fults recover of the defendant Mr. Clarence Kirby punitive damages of five-hundred dollars ($500), an aggregate of damages in the amount of $1,069.60. Rule 58(1), Federal Rules of Civil Procedure.